## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER RAUDONIS, as trustee for the WALTER J. RAUDONIS 2016 REVOCABLE TRUST, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>REALTY SHARES, INC., RS LENDING, INC., NAVJOT ATHWAL, EDWARD FORST and IIRR MANAGEMENT SERVICES, LLC,<br><br>        Defendants. | Civil Action No. |

## CLASS ACTION COMPLAINT

Plaintiff Walter Raudonis, as trustee for the Walter J. Raudonis 2016 Revocable Trust ("Plaintiff") by and through his attorneys, individually and on behalf of all others similarly situated, files this Complaint against Defendants RealtyShares, Inc. ("RealtyShares"), RS Lending, Inc. ("RS Lending"), Navjot Athwal ("Athwal"), Edward Forst ("Forst") and IIRR Management Services, LLC ("IIRR" or "IRM") (collectively "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a class action arising from Defendants' offering of securities in violation of the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* (the "Exchange Act"), California's Blue Sky Law, Cal. Corp. Code § 25401 *et seq.* and the common law.

2.      Defendant RealtyShares and its subsidiary, Defendant RS Lending, offered and sold securities to investors such as Plaintiff and the Classes (defined below) through an online

investment platform for real estate crowdfunding services. Among the investments they offered and sold to Plaintiff and Class members in or around 2018 were debt securities related to millions of dollars worth of loans for property acquisition and construction of several restaurant franchises and urgent care facilities at various locations across the United States. The sponsor and effective borrower for these loans was Franchise Growth, LLC ("Franchise Growth").

3.      In the offering documents for these investments, RealtyShares and RS Lending represented they had conducted due diligence on Franchise Growth, that Franchise Growth had a "reported track record" and "extensive experience" in the franchising business and that it anticipated the development of more than 400 units in 13 states within the next three years. RealtyShares and RS Lending also represented that the loans were structured to protect investors insofar as the proceeds were to be disbursed in a series of installments, spread over time so that the loan-to-cost ratio would at all times be kept within acceptable parameters.

4.      These material representations in the offering documents by RealtyShares and RS Lending were untrue. The reality was RealtyShares and RS Lending had done no effective due diligence to substantiate Franchise Growth's "track record" or "extensive experience." In fact, RealtyShares and RS Lending missed or ignored a number of red flags that would have indicated Franchise Growth was not a sound sponsor or borrower, including without limitation pending litigation against it for failure to pay legal bills and a prior bankruptcy and multimillion dollar contract judgment against one of its principals, Mr. Bruce Arinaga. In addition, contrary to their representations in the offering documents, RealtyShares and RS Lending allowed Franchise Growth to deplete the loan proceeds quickly, rapidly reducing the loan-to-cost ratios beyond what RealtyShares and RS Lending had promised investors.

5.     In March 2019 and in the months thereafter, RealtyShares began advising investors that Franchise Growth was defaulting on the loans, that construction on the projects had ceased or had never even started and that the loan funds were substantially depleted.

6.     In or around May 2019, Defendant IIRR purchased assets from RealtyShares and its subsidiaries, acquired the RealtyShares platform and agreed to manage the remaining investments and investors on the platform. Soon thereafter, IIRR advised investors in the Franchise Growth-related securities that they should expect to incur substantial losses.

7.     As detailed herein, Defendants RealtyShares and RS Lending, in soliciting investors in the Franchise Growth-related securities, knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. That caused Plaintiff and Class members substantial losses. Defendants Realty Share and RS Lending also offered Franchise Growth-related securities originating from California by means of written communications that included untrue statements of material fact and/or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Cal. Corp. Code § 25401, subjecting them to liability under Cal. Corp. Code § 25501. Defendant IIRR is liable as RealtyShares and RS Lending's successor. Defendants Navjot Athwal ("Athwal") and Edward Forst ("Forst"), who were directors and officers of RealtyShares and RS Lending responsible for the companies' overall business operations and strategy, are liable as control persons of RealtyShares and RS Lending under Section 20(a) of the Exchange Act and Cal. Corp. Code §25504, as well as for materially aiding RealtyShares and RS Lending in the acts constituting the violations under Cal. Corp.

Code § 25504. Defendants are also liable for breach of contract, fraud and negligent misrepresentation as a result of their misconduct relating to the Franchise Growth investments.

8.      By reason of the foregoing violations, Plaintiff and Class members are entitled to recover from Defendants damages for their losses on the Franchise Growth Investments under the Exchange Act and common law. In addition, Plaintiff and Class members are entitled to recover from Defendants the consideration paid for the securities, plus interest, less any income received on the securities, under Cal. Corp. Code § 25501.

9.      In addition to the Franchise Growth-related securities, RealtyShares and RS Lending also offered and sold to Plaintiff and Class members debt securities relating to a $2.625 million loan to Ingersoll Financial, LLC ("Ingersoll Financial"), which purportedly planned to use the proceeds to purchase 125 residential properties in various states, do minor repairs and clean up on the properties and then remarket them to sell to local investors interested in buying individual or smaller groups of the homes.

10.     In the offering materials for the investment relating to the Ingersoll Financial loan, called the "Nationwide SFR Package," RealtyShares and RS Lending represented, among other things, that a title search had been completed on all of the properties, which were supposedly "cleared" of "any existing liens… prior to close." RealtyShares and RS Lending also represented that the loan was secured by a first position lien against the properties, the average value of the properties was $40,500 and the loan was personally guaranteed by Mr. Keith Ingersoll, for whom "RealtyShares has confirmed a net worth in excess of the loan amount."

11.     These material representations in the Nationwide SFR Package offering materials by Defendants RealtyShares and RS Lending were untrue. In fact, no title search on

the properties had been done, RealtyShares did not actually have a first position lien on the properties, the average value of the properties was far less than $40,500 and Mr. Ingersoll's net worth was nowhere near the loan amount. Ingersoll Financial ultimately defaulted on the loan and went into bankruptcy, and RealtyShares and RS Lending unsuccessfully sought to enforce the personal guarantee against Mr. Ingersoll. By 2019, the money was gone, and Plaintiff and Class members were left holding the bag, sustaining almost total losses on their investments.

12.     As detailed herein, Defendants RealtyShares and RS Lending knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in connection with the Nationwide SFR Package, in violation of Section 10(b) of the Exchange Act and Rule 10b-5, which caused Plaintiffs and Class member substantial losses. Defendants Realty Share and RS Lending also offered Nationwide SFR Package-related securities originating from California by means of written communications that included untrue statements of material fact and/or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Cal. Corp. Code § 25401, subjecting them to liability under Cal. Corp. Code § 25501. Defendant IIRR is liable as successor to RealtyShares and RS Lending. Defendant Athwal, who was a director and officer of RealtyShares and RS Lending responsible for the companies' overall business operations and strategy at the time, is liable as a control person of RealtyShares and RS Lending under Section 20(a) of the Exchange Act and Cal. Corp. Code §25504, as well as for materially aiding RealtyShares and RS Lending in the acts constituting

the violations under Cal. Corp. Code § 25504.[1] Defendants are also liable for breach of contract, fraud and negligent misrepresentation as a result of their misconduct relating to the Nationwide SFR Package investments.

13.     By reason of the foregoing violations, Plaintiff and Class members are entitled to recover from Defendants RealtyShares, RS Lending, IIRR and Athwal damages for their losses on the Nationwide SFR Package under the Exchange Act and common law. In addition, Plaintiff and Class members are entitled to recover from those Defendans the consideration paid for the securities, plus interest, less any income received on the securities, under Cal. Corp. Code § 25501.

## PARTIES

14.     Plaintiff Walter Raudonis, who brings this action as trustee of the Walter J. Raudonis 2016 Revocable Trust, is a resident of Holliston, Massachusetts. He purchased $100,000 worth of debt securities related to a Franchise-Growth sponsored loan for property acquisition and construction of a Church's Chicken restaurant to be located at 2735 Calumet Trace, Owensboro, Kentucky in or around May 2018. He also purchased $100,000 worth of debt securities from the "Nationwide SFR Package," relating a loan to Ingersoll Financial to purchase, repair and resell residential properties, in or around late August 2016. Plaintiff's purchases are reflected in the attached certification.

15.     Defendant RealtyShares is a Delaware corporation with its principal place of business in San Francisco, California. RealtyShares owned and operated an online investment platform for real estate crowd funding services, www.realtyshares.com (the "RealtyShares

---

[1] Plaintiff does not assert a claim for control person liability against Defendant Forst with respect to the Nationwide SFR Package.

Platform"). The RealtyShares Platform enabled investors to purchase shares in private real estate investments, provided investors access to a range of real estate investment options and allowed users to browse, view, finalize, and manage real estate investments online. In or around November 2018, RealtyShares ceased adding new investors and offerings to the RealtyShares Platform due to its inability to secure additional capital.

16.     Defendant RS Lending is a Delaware corporation with its principal place of business in San Francisco, California. RS Lending is a wholly owned subsidiary of RealtyShares. RS Lending served as the issuer of the debt securities at issue, offering and selling to investors such as Plaintiff certain promissory notes made by RS Lending that were dependent for payment on payments that RS Lending received on specific corresponding borrower loans relating to real estate. These securities were offered through the RealtyShares Platform owned and operated by RS Lending's parent company, Defendant RealtyShares.

17.     Defendant Navjot Athwal is a California resident who co-founded RealtyShares in January 2013. He served as Chief Executive Officer of RealtyShares and RS Lending from October 2013 through November 2017 and served on RealtyShare's board of directors from October 2013 through June 2018. During his tenure at RealtyShares and RS Lending, Defendant Athwal was responsible for overseeing the strategic direction and operation of the business. Defendant Athwal is sued for his primary violations of the Exchange Act, the California Blue Sky Law and common law, as a control person of RealtyShares and RS Lending under the Exchange Act and the California Blue Sky Law and for materially aiding RealtyShares and RS Lending's violations of the California Blue Sky Law.

18.     Defendant Edward Forst is a New York resident who served as RealtyShares' and RS Lending's Chief Executive Officer from November 2017 through July 2018 and served

on RealtyShares' board of directors (including as chairman) from May 2017 until at least November 2018. As CEO and Chairman of the Board, Mr. Forst was responsible for RealtyShares and RS Lending's overall operations and business strategy. Defendant Forst is sued for his primary violations of the Exchange Act, the California Blue Sky Law and common law, as a control person of RealtyShares and RS Lending under the Exchange Act and the California Blue Sky Law and for materially aiding RealtyShares and RS Lending's violations of the California Blue Sky Law.

19.     Defendant IIRR is a Delaware corporation with its principal place of business in San Francisco, California. In or around May 2019, IIRR purchased certain assets from RealtyShares and its subsidiaries, acquired the RealtyShares Platform and contracted with RealtyShares to manage the remaining investments and investors on the RealtyShares Platform. IIRR claims to have salvaged $1.5 billion in assets from RealtyShares and RS Lending. IIRR is a joint venture formed through a partnership between RREAF Holdings LLC, a real estate sponsor and developer based in Texas, and iintoo Investments, a global real estate investment platform based in New York. On information and belief, Defendant IIRR is the successor to RealtyShares and RS Landing, has expressly or impliedly assumed their liabilities and/or has effectively consolidated or merged with RealtyShares and RS Lending by continuing their business operations, managing the same assets, using the same platform and employing the same personnel.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

21.     Venue is proper in Massachusetts pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa  and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

22.     In connection with the acts alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone and email communications.

## FACTUAL ALLEGATIONS

### *The Rise and Fall of RealtyShares*

23.     RealtyShares began operations in or around 2013. It owned and operated an online investment platform for real estate crowdfunding services, the RealtyShares Platform. Like any real estate crowdfunding platform, the idea was to allow multiple investors to pool their money together to invest in properties and projects larger than they could afford or manage on their own. The RealtyShares Platform allowed institutional and accredited investors to become equity or debt holders in corresponding real estate opportunities. The platform also provided a virtual space for companies, called "sponsors," that needed financing for their real estate projects to find investors who would purchase securities relating to those projects. RealtyShares offered different types of properties for investors to choose from, including commercial, retail, residential and mixed-use, in various geographical areas, with varying target returns. Minimum investments were as low as $5,000.

24.     In order to use the platform, a prospective investor would sign up online for a RealtyShares account. Once registered, the prospective investor could browse available investments. When a prospective investor found an investment of interest, he or she could

access a page with information on that property – information about the property itself, the financials, the property management and other financial and legal documents.

25.     In its marketing materials, RealtyShares represented it had already done all of the due diligence an investor would normally have to do themselves. RealtyShares also touted the purported fact that it had performed background checks on the key executives involved in the company handling each project.

26.     Once an investor selected and made an investment, his or her funds would be pooled with other investors and the investment would be closed. Each project had an overall funding goal that had to be met before individual investors could purchase shares. Once that goal was satisfied, investors would finalize their investments by electronically signing and sending documentation relating to the investment to RealtyShares, along with transferring the funds, all of which they could do through the RealtyShares Platform. Investors could then track their investments and earnings and manage documents relating to their investments on a custom dashboard on the RealtyShares Platform.

27.     RealtyShares and its subsidiary RS Lending charged fees associated with the investments they offered, including both equity investments and debt investments. For debt investments such as those at issue here, RealtyShares and RS Lending charged a servicing fee based on the spread between the interest rate the borrower was paying and the rate being paid to investors. On projects that RealtyShares and RS Lending raised funding for, they took a 2.5 - 3% origination fee on the money they raised for their projects.

28.     RealtyShares' marketing materials represented that the investments it offered were thoroughly vetted. According to RealtyShares, less than 10% of all applications received approval for financing because it engaged in "a rigorous and data-driven process that includes

sponsor evaluation, asset evaluation, underwriting, investment structuring, and approvals."[2] In the words of the company: "The important thing to remember is that RealtyShares does a substantial amount of due diligence for every investment we offer." RealtyShares averred that applicants were prequalified based on their past track record, financial strength and expertise. RealtyShares also claimed to do due diligence by reviewing the investment strategy, financial and legal standing of the applicant, as well as the location and condition of the property.

29.     The debt investments that RealtyShares offered essentially used investors' money as an indirect loan to the company handling the project. Investors were supposed to earn money on the interest charged. Often investor funds were used to fix and flip residential property. The loans usually had a twelve-month term and were typically secured by a mortgage or deed of trust. Investors were supposed to receive a percentage return on the money they invested and if everything went as expected, the principal investment would be returned after the term of the loan.

30.     Between 2013 and 2018, more than a thousand investments, totaling more than $800 million dollars, were funded through the RealtyShares Platform.

31.     In or around November 2018, RealtyShares ceased adding new investors and offerings to the RealtyShares Platform due to an inability to secure additional capital.

32.     In or around May 2019, IIRR purchased certain assets from RealtyShares and its subsidiaries, acquired the RealtyShares Platform and contracted with RealtyShares to manage the remaining investments and investors on the RealtyShares Platform.

---

[2] https://www.realtyshares.com/learn/article/ultimate-guide-real-estate-crowdfunding.

33.     In an announcement to RealtyShares investors on or about May 14, 2019, RealtyShares advised as follows, emphasizing the continuity in operations following IIRR's agreement to manage the RealtyShares investments and to purchase RealtyShares and RS Lending assets:

> Today, we are pleased to announce that we have contracted with IIRR Management Services, LLC to manage the remaining investments and investors on the RealtyShares platform, and to purchase certain assets of RealtyShares and its subsidiaries….
>
> IIRR Management Services, LLC will leverage current RealtyShares staff and partners (including Assure Services, our Fund Administrator) to continue servicing investors and assets through the RealtyShares platform…. This contract management transition does not change your rights in or the structure of the underlying real estate investments. You can continue to reach us at contact@realtyshares.com.

34.     Following this announcement, Defendants RealtyShares and IIRR posted the following on the home page of RealtyShares' web site:

> We are proud to announce that RealtyShares ongoing operations for investors is being taken over by IIRR Management Services, LLC….
>
> CONTACT US        contact@realtyshares.com
>
> IIRR has acquired RealtyShares.com from RealtyShares Inc. We will continue to operate the RealtyShares site and offer the same high quality platform and services. As of April 29, 2019, all RealtyShares users are subject to the Privacy Policy and Terms of Service of IIRR Management Services, which provides the same level of privacy rights and protections for users' personal information as RealtyShares's former Terms of Service and Privacy Policy.

35.     In an interview with "crowdfundinsider.com" published on October 22, 2019, Jeff Holzmann, CEO of IIRR, indicated as follows when asked to provide "insight as to how RealtyShares got into trouble":[3]

---

[3]     https://www.crowdfundinsider.com/2019/10/153179-iirr-management-services-discusses-realtyshares-acquisition-vision-for-the-future-of-real-estate-crowdfunding/.

RealtyShares experienced rapid growth fueled by venture capital, which also resulted in pressure to show top-line growth. It appears that in the rush to grow, less emphasis was placed on professional underwriting, asset management and customer service. This lead to the funding of deals that would not be considered "professional grade," lax oversight as the number of investments grew into the thousands and inadequate customer service as the number of clients reached tens of thousands.

36.    In the same interview,[4] when asked how the real estate crowdfunding sector was evolving, Mr. Holzmann stated:

> What customers should be doing is judging by the facts, check for successful track records, professional underwriting and proper asset management.
>
> Unfortunately, we often hear from RealtyShares customers today that they chose RealtyShares based on their ads, and now regret not going to more professional outfit like iintoo or investing with a sponsor like RREAF directly.

### RealtyShares Touted a "Stringent, Five-Step Vetting Process"[5] for Investments

37.    Before its downfall, RealtyShares represented that it went to "considerable lengths to protect investors by evaluating, underwriting and structuring their investments."[6] As set forth in the marketing materials on its web site: "Since each opportunity is unique, a certain level of due diligence is key to assessing the risks associated with a particular property."[7] According to RealtyShares: "Evaluating these opportunities, also known as "underwriting",

---

[4] *Id.*

[5] https://www.realtyshares.com/learn/article/ultimate-guide-real-estate-crowdfunding.

[6] https://www.realtyshares.com/learn/article/ultimate-guide-real-estate-crowdfunding.

[7]    https://www.realtyshares.com/learn/article/5-things-that-happen-to-an-investment-before-you-see-it.

requires an in-depth investigation during which our experienced team takes precise measures to ensure that the investment opportunity is properly vetted and meets our rigorous standards."[8]

38.     RealtyShares promised investors that it took the following five steps "before a deal ever makes it to the platform":[9]

**1 SPONSOR EVALUATION**
We believe that sponsor quality is a leading indicator of a worthy investment opportunity.

**2 ASSET EVALUATION**
We believe that attractive risk-adjusted returens can be found in value-add, middle market opportunities.

**3 UNDERWRITING**
We believe in proper risk analysis, through the intelligent application of data and industry expertise.

**4 TRANSACTION NEGOTIATION**
We believe in protecting our investors & mitigating risk through favorable deal terms.

**5 APPROVALS**
We believe in taking compliance seriously, soliciting internal and external approval at every step

39.     With respect to the first step, sponsor evaluation, RealtyShares represented that "sponsor quality is a leading indicator of a worthy investment opportunity. A sponsor's prior

---

[8]     https://www.realtyshares.com/learn/article/5-things-that-happen-to-an-investment-before-you-see-it.

[9]     https://www.realtyshares.com/learn/article/5-things-that-happen-to-an-investment-before-you-see-it.

experience and track record are critical in deciding whether the project meets our standards for listing on the platform. A sponsor must pass this first step of diligence in order for us to further consider their project."[10] In particular, RealtyShares promised that "[w]hen deciding whether or not to work with a sponsor, we first look for a track record of successful real estate investments, especially projects that bear a strong resemblance to the one under consideration."[11]

40.   RealtyShares represented to investors that it evaluated sponsors in three ways. First, RealtyShares purportedly checked the sponsor's track record by making sure the sponsor had executed a minimum of $10,000,000 in transactions in the last three years or had a minimum of $20 million in assets under management. Second, RealtyShares claimed it assessed the sponsor's familiarity with the region in which they were doing their project. Finally, Realty Shares promised investors it performed background and credit checks on the sponsors: "The principles [sic] of the sponsor company must submit references and participate in background and credit checks designed to uncover past foreclosure issues, court judgments and personal credit problems, as well as any concerning police records or securities violations."[12]

41.   RealtyShares also represented it vetted all the investments it offered in a variety of other ways, including asset evaluation, underwriting – in which RealtyShares developed its "own financial models" using its "superior data," negotiating the transaction to protect investors and mitigate risk and obtaining compliance approval. RealtyShares indicated it "prioritize[d]…

---

[10]   https://www.realtyshares.com/learn/article/5-things-that-happen-to-an-investment-before-you-see-it.

[11]   https://www.realtyshares.com/learn/article/the-life-cycle-of-your-investment.

[12]   https://www.realtyshares.com/learn/article/5-things-that-happen-to-an-investment-before-you-see-it; https://www.realtyshares.com/learn/article/the-life-cycle-of-your-investment.

the safety of investments from potential downside" and would "[d]evelop and/or collect applicable transaction documentation," including "third party reports, title, entity information, operating agreement, loan documents… and escrow arrangements."[13]

42.   RealtyShares' supposed Herculean efforts to vet investments stood at the heart of its marketing strategy. RealtyShares attempted to differentiate itself from competitors by trumpeting its due diligence on investments: "When it comes to investing, you've got a lot of options. But I believe that, thanks to our experienced team of industry experts and our stringent underwriting standards, RealtyShares has the ability to offer investments of exceptional quality."[14]

### RealtyShares and RS Lending Offer and Sell Debt Securities Relating to Loans to Franchise Growth for Property Acquisition and Construction

43.   In or around 2018, RealtyShares and RS Lending offered and sold to investors debt securities, in the form of borrower dependent promissory notes, related to millions of dollars worth of loans for the acquisition and construction of various properties, involving a single sponsor, Franchise Growth (the "Franchise Growth Investments"). In connection with each investment, Franchise Growth would acquire property and build new franchise locations, including fast food restaurants and urgent health care centers. For each deal, Franchise Growth would form a borrower entity which would hold title to the property and function as the borrower on the loan.

44.   The Franchise Growth Investments related to at least the following locations:

---

[13]   https://www.realtyshares.com/learn/article/5-things-that-happen-to-an-investment-before-you-see-it.

[14]   https://www.realtyshares.com/learn/article/the-life-cycle-of-your-investment.

(a)      American Family Care: 125 Sunrise Highway, West Islip, NY

(b)      American Family Care: W. 8040 Ulmerton Road, Largo FL

(c)      Captain D's: Midland Trail, Shelbyville, KY

(d)      Captain D's: Cherry Road, Rock Hill, SC

(e)      Church's Chicken: 1601 N. Woodland Blvd, Deland, FL

(f)      Church's Chicken: 81 St., Westminster, CO

(g)      Church's Chicken: 845 S. Orange Blossom Trail, Apopka, FL

(h)      Church's Chicken: 2015 N. Wickham Road, Melbourne, FL

(i)      Church's Chicken: 2735 Calumet Trace, Owensboro, KY

(j)      Church's Chicken: 4684 Patterson Ave., Winston Salem, NC

(k)      Dog Haus: 14400 Pardee Rd., Taylor, MI

(l)      Dog Haus: 4405 Rte. 36E, Decatur, IL

(m)      Nashville Checkers and Taco John's in Antioch, TN.

45.      On information and belief, the terms of the loans for each of the Franchise Growth Investments were substantially similar, with interest rates of approximately 10%, initial maturity dates of 12 months and loan amounts ranging from approximately $1.5 million to approximately $4 million. According to the terms of the notes, RS Lending was only obligated to make payment if and to the extent that RS Lending received payment on the corresponding borrower loan relating to each property. The corresponding borrower loans were secured by liens on the properties.

46.      On information and belief, the offering documents for each of the Franchise Growth Investments were substantially similar. For each investment, RealtyShares and RS Lending provided investors with a "Property Information Package" via the RealtyShares

Platform, which purported to be the operative offering materials to be reviewed and considered by investors with respect to each offering. The Property Information package for each Franchise Growth Investment included: (a) offering-specific information on the RealtyShares Platform; (b) the form of note for each investment; (c) a private placement memorandum; (d) a "series note listing"; and (e) a subscription agreement. The Subscription Agreements for the Franchise Growth Investments provided that the Subscriber's purchase of the notes was subject to the terms and conditions of the Subscription Agreement and the other portions of the Property Information Package.

47.     The offering-specific information on the RealtyShares Platform for each Franchise Growth Investment included a "Summary of Terms." On information and belief, in the "Investment Overview" section of the Summary of Terms for each of the Franchise Growth Investments, RealtyShares and RS Lending represented as follows:

> The sponsor, Franchise Growth, LLC (the "Sponsor"), has a reported track record [and/or "extensive experience"] in restaurant franchising and anticipates the development of 400+ units in 13 states in the next 3 years.

48.     Similarly, on information and belief, in the "Management" section of the Summary of Terms for each of the Franchise Growth Investments, RealtyShares represented that Mr. For Li, a partner of Franchise Growth, formed the company in 2016 "to develop more than 400 franchise business[es] in 13 U.S. States."

49.     On information and belief, in the private placement memorandum for each of the Franchise Growth Investments, in the section entitled "Lending Standards and Policies," Realty Shares and RS Lending promised that their "lending process" included "conducting due diligence." As an example, in the private placement memorandum for the loan relating to the Church's Chicken restaurant to be located at 2735 Calumet Trace, Owensboro, Kentucky (the

"Owensboro Church's Chicken"), for which Plaintiff purchased debt securities, RealtyShares and RS Lending represented as follows:

> *Conduct of Due Diligence.* RealtyShares examines the borrower and the subject property, along with local market conditions, comparable property analyses and many other factors that may affect the performance of the borrower loan. If RealtyShares does not have previous experience with the borrower, RealtyShares will perform background and credit checks on the borrower's principals. Material past and current legal issues are investigated as well as reported issues that the principals of the borrower may have had with financial institutions, contractors and governmental authorities. RealtyShares also reviews the borrower's experience level, track record and general approach to commercial real estate investments. To the extent available, RealtyShares reviews the borrower's portfolio of past investments. RealtyShares also attempts to determine whether the borrower has extensive and good working relationships with financial institutions, brokers and other professionals.
>
> RealtyShares reviews the underlying property and makes reasonable efforts to confirm that the current and expected post-renovation fair market value of the property is in line with comparable properties. RealtyShares may rely on valuations from other sources, such as the recent sales price of the property or comparable properties, and/or an opinion of value from a real estate broker knowledgeable in the area where the Property is located, in connection with such efforts. Renovation budgets generally are expected not to exceed a certain portion of a property's purchase price (because higher amounts can indicate a greater level of risk); however, each situation is evaluated individually. If the age of the property is not within the general range of competing properties, there may be marginally increased risk.
>
> Other due diligence matters that RealtyShares may consider include an evaluation of overall risks and mitigating factors, market conditions, local employment conditions, submarket property values, the strength of a borrower, and other relevant loan-specific issues.[15]

50.    On information and belief, in the "Investment Highlights" section of the Summary of Terms included with the offering-specific information for each Franchise Growth Investment on the RealtyShares Platform, RealtyShares and RS Lending emphasized that the

---

[15] *E.g.*, Private Placement Memorandum for the Franchise Growth Investment involving the Owensboro Church's Chicken at 45.

"Loan Structure Potentially Reduces Risk." By way of example, in the Summary of Terms for the loan relating to the Owensboro Church's Chicken, RealtyShares and RS Lending represented as follows:

> The loan from RS Lending will be disbursed in installments, over six different drawdowns, spread over time so that the loan-to-cost ratio is kept at approximately 78%. The Sponsor is to therefore have a minimum approx. 22% equity exposure throughout the term of the loan. In addition, a nine-month interest reserve is being established in order to ensure the receipt of interest payments during the construction period.[16]

51.     Consistent with the foregoing, also on information and belief, in the private placement memoranda for each of the Franchise Growth Investments, in the section entitled "Certain Aspects of the Loans; Advances; Construction Reserves," Realty Shares and RS Lending indicated that loan funds would be disbursed only as portions of the construction were completed. For example, in the foregoing section of the private placement memorandum for the Owensboro Church's Chicken investment, RealtyShares and RS Lending represented as follows:

> *Construction Reserves*. A portion of the principal amount of many borrower loans will relate to funds financed for a borrower's renovation or construction efforts on a subject property. The loan underwriting for such principal amounts is typically based upon a determined "after repair" value, i.e., the projected value of the property *after* the completion of the construction or renovation work.

> Although a series of Notes relating to a corresponding borrower loan involving construction financing will generally be fully funded at the closing of such series, the portion of such loan corresponding to such construction amounts will typically be disbursed by the Company or its service provider only as portions of the construction work are completed. In most cases, the Company will require the borrower to have already completed certain line items within the scope of work before the borrower will be entitled to receive any of the construction reserve amounts. The Company may retain third-party service providers to monitor such

---

[16] *E.g.*, Summary of Terms on RealtyShares Platform for the Franchise Growth Investment involving the Owensboro Church's Chicken.

progress and to advise the Company as to the percentage of work completed and the appropriate amount of disbursements of such reserved amounts.[17]

52.     Similarly, in the "Lending Process Generally" section of the private placement memorandum for the Owensboro Church's Chicken investment, which on information and belief is the same or substantially similar for the other Franchise Growth Investments, RealtyShares and RS Lending represented:

> *Negotiating and Structuring Transactions.* A borrower loan will be governed by a promissory note, a security instrument such as a deed of trust or a mortgage, generally a guaranty from a principal of the borrower (sometimes a full payment guaranty, but sometimes a guaranty limited to certain "bad acts" of the borrower), along with certain ancillary loan documents. RealtyShares considers how the legal structure might contribute to the overall risks of the borrower loan, and attempts to negotiate an agreement that will provide the Company with a reasonably acceptable loan structure as pertains to its legal rights with respect to the borrower. *In many cases, RealtyShares structures a borrower loan so that a "holdback" reserve is established from part of the total loan amount; this reserve (if applicable) would generally be designed to be "drawn down" as the renovation work anticipated for the property is completed.*[18]

53.     On information and belief, Defendants Athwal and/or Forst directly solicited investments relating to each of the Franchise Growth Investments, and directly participated in writing the offering memoranda, as reflected by the fact that they had responsibility for overseeing the strategic direction and operation of the business and/or signed certain of the offering documents, including the promissory notes and subscription agreements, on behalf of Defendants RealtyShares and RS Lending.

---

[17] *E.g.*, Private Placement Memorandum for the Franchise Growth Investment involving the Owensboro Church's Chicken at 21.

[18] *E.g.*, Private Placement Memorandum for the Franchise Growth Investment involving the Owensboro Church's Chicken at 45-46 (emphasis added).

54.     Upon receipt of the foregoing offering materials, Plaintiff and members of the Franchise Growth Class (defined below) purchased debt securities in each of the Franchise Growth Investments in or around 2018.

### *RealtyShares and RS Lending Offer and Sell Debt Securities Relating to a Loan for Property Acquisition and Construction of the Owensboro Church's Chicken*

55.     In or around the spring of 2018, Plaintiff, through the Walter J. Raudonis 2016 Revocable Trust, purchased a 2017A Unsecured Non-Recourse Borrower Dependent Promissory Note issued by RS Lending in the amount of $100,000, Series (Loan) Number RSL.2017A.162, relating to the property at 2735 Calumet Trace, Owensboro, KY 4230, with an interest rate of 9.5%, a loan start date of May 2, 2018 and an expected maturity date of May 2, 2019, twelve months from the loan date (the "Owensboro Church's Chicken Investment"). This was one of the Franchise Growth Investments. The total loan amount was $1,650,000, but it was conducted in two "tranches"; Plaintiff invested in "Tranche 1." The minimum investment amount was $5,000. According to the terms of the Note, RS Lending was only obligated to make payment on the Note if and to the extent that RS Lending Received payment on the corresponding borrower loan relating to the property.

56.     Also in or around the spring of 2018, the other members of the Owensboro Church's Chicken Subclass (defined below) purchased notes relating to the Owensboro Church's Chicken Investment.

57.     Plaintiff and the Owensboro Church's Chicken Subclass purchased such notes upon RealtyShares and RS Lending providing them with a Subscription Agreement and other contents of a "Property Information Package" via the RealtyShares Platform, which contained the representations discussed in paragraphs 47 - 53 above.

58.     Defendant Athwal directly or indirectly solicited investments relating to the Owensboro Church's Chicken, and participated in writing the offering memoranda, insofar as he was on the Board of Directors of RealtyShares at the time of the solicitations.

59.     Defendant Forst directly or indirectly solicited investments relating to the Owensboro Church's Chicken, and participated in writing the offering memoranda, as reflected by the fact that he signed certain of the offering documents, including the promissory notes and subscription agreement on behalf of Defendants RealtyShares and RS Lending.

***Plaintiff and Class Members' Franchise Growth Investments Unravel, and Defendants' Misrepresentations are Revealed***

60.     Directly contrary to their promises in the offering documents, RealtyShares and RS Lending had failed to conduct adequate due diligence on the sponsor Franchise Growth. Had Defendants conducted any meaningful due diligence, they would have discovered that there was virtually no public information available suggesting that Franchise Growth had any "track record" in the franchising business. And what public information there was revealed a number of red flags that Defendants ignored or failed to uncover or disclose to investors.

61.     For example, in December 2017, a company called New Republic National Fidelity LLC had sued Franchise Growth in Florida state court to recover over $100,000 in unpaid legal bills.

62.     Even more disturbingly, one of the few pieces on the Internet discussing Franchise Growth, a news wire dated May 2, 2017 and entitled "Franchise Growth: An Integrated Turnkey Solution for the Franchisee Industry,"[19] revealed that an individual named

---

[19]   https://staging.icrowdnewswire.com/2017/05/01/franchise-growth-llc-an-integrated-turnkey-solution-for-the-franchise-industry/.

Bruce Arinaga was one of the principals of Franchise Growth. Had Defendants conducted a modicum of due diligence, they would have learned that Mr. Arinaga had arrived at Franchise Growth with a checkered past. Mr. Arinaga had filed for bankruptcy in Maryland in 2012. The original voluntary petition for bankruptcy reflected that among Mr. Arinaga's "liabilities" were creditors holding unsecured nonpriority claims against him amounting to over ***$31,000,000***, including a guaranty on a real estate development loan of over ***$10,000,000***. In addition, Mr. Arianga had a $2.75 million contract judgment against him in a case brought in state court in Cook County, Illinois by creditor Everest Real Estate Fund.

63.     Defendants' failure to uncover or disclose these glaring red flags demonstrates their complete failure to conduct due diligence of the sponsor Franchise Growth, in direct violation of their representations that they would do so.

64.     In or around March 2019, Franchise Growth and its affiliated borrowers began defaulting on the loans. At that time, RealtyShares started to advise investors that serious problems with Franchise Growth and its projects had begun to emerge, reflecting that Defendants had failed to conduct adequate due diligence. For example, RealtyShares provided the following update regarding the Owensboro Church's Chicken Investment on its on-line Platform in March 2019:

> The borrower has informed us that the project is on hold because the franchisor has stripped territory from the franchise tenant. The borrower is pursuing a ground lease with another Franchisee. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan.

65.     Around the same time, RealtyShares began posting updates regarding similar problems with the other Franchise Growth Investments. For example, in or around March 2019, RealtyShares advised investors in securities relating to the Church's Chicken in Westminster Colorado that the sponsor/borrower was in default and they were seeking a negotiated

settlement with Franchise Growth instead of foreclosing. Also in March 2019, RealtyShares posted the following regarding the Westminster Church's Chicken investment:

> The borrower has informed us that the construction of the property is on hold because construction estimates are far higher than proforma. The borrower is looking at alternatives. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan. We will be conducting independent research to determine the current value of the property. RealtyShares will update you after this research is completed and if we receive relevant information from the borrower.

66.     At the same time, RealtyShares posted an identical message regarding a different project, the Church's Chicken in Winston-Salem, North Carolina.

67.     Similarly, RealtyShares posted the following message regarding the Captain D's in Shelbyville, Kentucky in or around March 2019:

> The borrower has informed us that the completion of the property has been delayed because the borrower has insufficient funds to complete construction. The borrower informs us that he has been attempting to raise additional equity to enable the completion of the construction. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan. We will be conducting independent research to determine the current value of the property. We will update you after this research is completed and if we receive relevant information from the borrower.

68.     At the same time, RealtyShares posted the following message regarding the American Family Care in West Islip, New York:

> The borrower has informed us that the tenant is now 4 months in arrears on rent payments and is attempting to negotiate a reduction in rent. We will update you if we receive further information on the outcome of these negotiations. We are also in discussions with the borrower who is interested in bringing in other investors to buy the loan. We will be conducting independent research to determine the current value of the property. We will update you after this research is completed and if we receive relevant information from the borrower.

69.     The Franchise Growth Investments continued to unravel, confirming the Defendants' failure to conduct the due diligence they had promised. For example, in April 2019,

RealtyShares issued the following update on the Platform with respect to the Owensboro Church's Chicken Investment:

> The borrower reports that the tenant's franchise agreement has been terminated. According to the borrower, construction has not begun and the project terminated. The search for a new operator is underway. We are obtaining current financial statements from the franchisee and are hiring an appraiser to determine the "as-is" value of the property. Once the due diligence is complete, we will be in a better position to negotiate [a] loan sale or if negotiations fail, foreclose. RealtyShares will update you when we have additional relevant information to share.

70.     Also in April 2019, RealtyShares issued the following identical update on several of the Franchise Growth Investments, including at least the Church's Chickens in Apopka, Florida, Westminster, Colorado and Winston-Salem, North Carolina; the Captain D's in Kentucky; the Dog Haus in Decatur, Illinois; and the American Family Cares in Florida and New York:

> The discussions with the borrower regarding bringing in outside investors to buy this loan have moved forward and we are working to complete our due diligence, including determining a final value for a buy-out. We will give this process 30-days to finalize transaction terms. We will begin to foreclose if, after 30-days, we believe we are not close to a deal. RealtyShares will update you when we have additional relevant information to share.

On information and belief, RealtyShares provided the same or similar updates regarding the other Franchise Growth Investments in or around April 2019.

71.     As events continued to unfold via updates from RealtyShares in late April and into May 2019, it became clear that on many of the projects (including the Owensboro Church's Chicken), in direct violation of the representations they had made in the offering documents, RealtyShares and RS Lending had disbursed significant portions of the loans, even though permitting was not complete and construction on the projects had never even begun. That caused the loan-to-cost ratio to be far lower than represented by RealtyShares and RS Lending. For several of the projects, RealtyShares admitted that the costs to complete construction would

substantially exceed budget such that additional capital would be required to complete the projects.

72.     As noted, IIRR took over the asset management duties of RealtyShares. In June 2019, IIRR provided the following update regarding the Owensboro Church's Chicken Investment:

> IRM has researched the investment status and has received an updated appraisal of the property. IRM is in the process of analyzing the appraisal; however, the preliminary finding indicates that your investment will incur a substantial loss.
>
> After our analysis is complete, hopefully within two weeks, IRM will be in a position to provide an estimate of the potential loss.

Also in June 2019, IIRR provided the same or substantially similar updates regarding other Franchise Growth Investments, including at least the Church's Chickens in North Carolina and Colorado, the Captain D's in Kentucky and the American Family Care in Florida and New York.

73.     In subsequent e-mail communications with investors regarding at least one of these investments in June 2019, the Church's Chicken in Colorado, IIRR admitted as follows: "We have reasons to believe that the sponsor did not execute well on the original business plan, and as such, we now estimate that potential, partial or complete, losses are possible in this portfolio."

74.     On July 2, 2019, IIRR e-mailed investors in the Franchise Growth Investments as follows:

> As you may know, several deals in the Franchise Growth portfolio are not performing according to the original plans, and IRM is expecting losses in these investments…
>
> We have arranged an hour long Webinar with Mr. Bruce Arinaga and Mr. For Li of Franchise Growth. LLC, they will present the deal chronology, their analysis of the situation, and their version of events. They have also agreed to answer selected questions from the audience….

75.     In the webinar, the representatives from Franchise Growth, Messrs. For Li and Bruce Arinaga, confirmed that Franchise Growth had no real experience or expertise with construction development projects by admitting that they essentially outsourced all activities relating to the construction of these projects to another developer, American Development Projects ("ADP"). Franchise Growth then blamed ADP for all of the problems on all of the projects, claiming in essence that ADP had stolen approximately $7,000,000 in loan proceeds on the properties but did not use the funds for construction. Even assuming that the representatives from Franchise Growth were being truthful, the webinar made clear that Defendants failed to conduct adequate due diligence on Franchise Growth, insofar as Franchise Growth admitted that it had failed to conduct adequate due diligence of ADP, inappropriately delegated essential functions on the projects to ADP, failed to install safeguards in the disbursement process and failed to monitor the projects.

76.     In the last half of 2019, IIRR periodically updated investors regarding on-going discussions with Franchise Growth. On January 3, 2020, IIRR emailed investors advising them that it had executed a forbearance agreement with Franchise Growth and affiliated entities. IIRR represented that under the forbearance agreement, it would refrain from proceedings to foreclose on the secured assets in exchange for Franchise Growth's promise to repay investors the capital they originally invested. IIRR cautioned, however, that: "It is important to remember that while Franchise Growth agreed to these terms, their ability to pay is dependent on a successful raise of additional capital from new sources. If this process is unsuccessful, IRM intends to move quickly to foreclose on all assets and sell them at FMV (fair market value), in the best interest of investors." This was consistent with a previous e-mail that IIRR had sent to investors describing the potential deal on September 2, 2019.

77.     Contrary to their representations in the offering documents, Defendants failed to conduct due diligence on Franchise Growth, failed to confirm its reported "track record" in the development of real estate projects and failed to disburse loan funds in installments as construction proceeded so as to keep the loan-to-cost ratio within acceptable parameters and protect investors. Defendants' misrepresentations and other misconduct described above violated the Exchange Act, the California Blue Sky Law and common law, causing them substantial losses, which they are entitled to recover.  Pursuant to the California Blue Sky Law, Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass are also entitled to rescission of their investments.

### RealtyShares and RS Lending Offer and Sell Securities as the "Nationwide SFR Package," and Plaintiff and the Nationwide SFR Class Purchases such Securities

78.     In or around mid-2016, RealtyShares and RS Lending offered investors the "Nationwide SFR Package," which was an opportunity to purchase debt securities relating to a $2.625 million loan to the company Ingersoll Financial. The investment took the form of certain unsecured, non-recourse promissory notes of RS Lending, which were dependent for payment on payments that RS Lending received on a corresponding borrower loan. The term of the loan was 12 months, with an interest rate of 10%.

79.     RealtyShares and RS Lending provided investors in the Nationwide SFR Package with information relating to the offering via the RealtyShares Platform, including: (a) offering-specific information on the RealtyShares Platform; (b) the form of Note for each investment; (c) a private placement memorandum; (d) a "series note listing"; and (e) a subscription agreement. The Subscription Agreements for the Nationwide SFR Package provided that the Subscriber's purchase of the notes was subject to the terms and conditions of

the Subscription Agreement and other "Transaction Documents," including the Note, private placement memorandum and series note listing.

80.     In the "Summary of Terms" in the offering specific information RealtyShares and RS Lending provided to investors for the Nationwide SFR Package on the RealtyShares Platform, RealtyShares and RS Lending represented that the loan would be "secured by 125 properties in Ohio, Oklahoma, Virginia, Wisconsin, West Virginia, Wyoming, Indiana, Kentucky, Maryland, Michigan, Missouri, Mississippi, North Carolina, Alabama, Arkansas, Florida, Georgia, Iowa, Louisiana and Illinois." RealtyShares and RS Lending further indicated that "Ingersoll Financial is purchasing the properties for $3.75 million (average of $30,000 per property), and RealtyShares has advanced $2.625 million ($21,000 per property or 70 LTC [Loan-to-Cost]) to be used to complete the purchase." The plan was for Ingersoll Financial to do minor repairs and clean up on the properties and then remarket them to sell to local investors interested in buying individual or smaller groups of the homes.

81.     According to RealtyShares and RS Lending's "Summary of Terms," the loan was "[s]ecured by a first position lien against a single-family residential property for the purpose of purchase and sale/refinance." This was confirmed by the Series Note Listing, which provided that the "Security for the Corresponding Borrower Loan" was a "1st Lien" on the properties. It was also consistent with the private placement memorandum for the Nationwide SFR Package, which provided (at p. 45), that RealtyShares and RS Lending expected that each "senior loan," such as the loan contemplated by the Nationwide SFR Package, would "generally be secured by a first lien security interest such as a mortgage, deed of trust or security deed on the underlying real estate."

82.     RealtyShares and RS Lending's Summary of Terms also represented as follows:

The loan features an accelerated payoff. RealtyShares is to release liens as properties are sold. For each lien release Ingersoll is required to forward RealtyShares the larger of $50,000 or 75% of the sales price of the property. The loan is to be fully paid off on or before the sale of the 53rd property out of the transaction….

83.     Critically, RealtyShares and RS Lending promised investors the following: "**A title search has been completed on each property, and the sponsor cleared any existing liens… prior to close.**"[20] This representation proved to be entirely false.

84.     RealtyShares and RS Lending further represented as follows with respect to the value of the properties:

RealtyShares obtained a CMA (comparative market analysis) from the buyer for each property, and selected 19 properties targeting highest value, lowest value, and a random selection of properties for a Broker's Price Opinion. A selection of these reports are available in the documentation section. The average value of the returned BPOs was approximately $40,500.

85.     In the Private Placement Memorandum for the Nationwide SFR Package (p. 42), RealtyShares and RS Lending indicated that they "review[ed] the proposed investment opportunity and pursue[d] debt investment opportunities where the total amount of the loan will generally not exceed a certain percentage (the "loan-to-value ratio") of the value of the property securing the loan." According to the PPM, for "senior loans" involving "Rehabilitation; Commercial or Residential" property, the purported loan-to-value ratio was 80%.

86.     RealtyShares and RS Lending also indicated in the Summary of Terms that the loan was personally guaranteed by Keith Ingersoll, the principal partner of Ingersoll Financial. The Summary of Terms represented that "RealtyShares has confirmed a net worth in excess of the loan amount."

---

[20] Summary of Terms for Nationwide SFR Package (emphasis added).

87.     Defendant Athwal directly solicited investments relating to the Nationwide SFR Package, and directly participated in writing the offering memoranda, as reflected by the fact that he signed certain of the offering documents, including the promissory notes and subscription agreement on behalf of Defendants RealtyShares and RS Lending.

88.     Plaintiff, upon receipt of the offering materials described above, through the Walter J. Raudonis 2016 Revocable Trust, purchased a Non-Recourse Borrower Dependent Promissory Note issued by RS Lending, Series (Loan) Number RSL.201608.11, in the amount of $100,000 from the Nationwide SFR Package in or around the summer of 2016, with an interest rate of 10%, a loan start date of August 25, 2016 and an expected maturity date of August 25, 2017, twelve months from the date of issuance. At around the same time, upon receipt of the same offering materials, the other members of the Nationwide SFR Class (defined below) purchased notes from the Nationwide SFR Package.

89.     The Nationwide SFR Package investment closed with the sponsor on or around August 25, 2016, with total funding of $2,625,000.

***Investments in the Nationwide SFR Package Collapse, Revealing Defendants' Misrepresentations***

90.     After Plaintiff and the Nationwide SFR Class invested in the Nationwide SFR Package, problems began to emerge. Contrary to Defendants' representations, a title search had not been completed on each property, and the sponsor had not actually "cleared any existing liens… prior to close." Ingersoll Financial eventually defaulted on the loan, RS Lending brought litigation against Ingersoll Financial on the loan and Keith Ingersoll on the personal guarantee and Ingersoll Financial went into bankruptcy.

91.      In March 2018, RealtyShares revealed for the first time that, contrary to its prior representations, it did not have a first position security interest in the properties. In a March 7,

2018 update, RealtyShares first disclosed that there were potential issues regarding ownership

of the properties:

> RealtyShares has an agreement in principal to liquidate the properties in bankruptcy through a third party broker chosen by both parties, but the sponsor has yet to sort out the ownership issues with the Land Trust,  at closing the borrower took title to the properties through a Land Trust. Our attorneys think that is a pass through ownership vehicle and we are still secured creditors. There needs to be some finality there before we can enter a 9019 settlement and get a plan submitted (before that the sponsor's counsel  needs to amend the debtor's schedule to include all of the properties and to notify all junior interest holders, including taxing authorities with an interest affected by the bankruptcy)….

92.     Then, in a March 16, 2018 update, RealtyShares admitted as follows: "We are

also conducting due diligence on suing the escrow agent who did not ensure Ingersoll Financial

as the owner of record for the property." It thus became clear that Defendants did *not* have a

first position security interest in the properties.

93.     That Defendants never had a first lien on the properties was confirmed in a June

5, 2018 update, as follows:

> RealtyShares has executed a Settlement Agreement with the Sponsor. RealtyShares will be filing the Settlement Agreement with the court today. In the agreement, the Sponsor has stipulated to provide corrected deeds as soon as possible. The new deeds would be signed by the original seller and by the Sponsor entitling the property in the name of Ingersoll Financial, the entity mortgages are recorded under. The Sponsor has also agreed to hire the investment broker and title agent that RealtyShares preferred. The title company is currently reviewing the title work on all of the properties to examine title and estimate when RealtyShares could provide marketable title so that RealtyShares can sell the houses….

94.     On or about June 25, 2018, RealtyShares posted the following on the Platform,

confirming the lack of security interest and consequent inability of Defendants to obtain

marketable title on the properties:

> RealtyShares has filed a motion to have the bankruptcy court approve a compromise and settlement plan, which we hope the court will approve in July. Our counsel is working with the borrower's counsel to finalize a recommended sale process for the properties, including the marketing and sale of approximately

68 properties where title insurance may be somewhat problematic because of earlier title issues. There appears to remain, however, a sufficient number of insurable properties to support an auction process. Once the sale process motion is filed, the broker can complete its marketing package and make preliminary inquiries to the potential buyer pool. The marketing for the auction can proceed in earnest once the sale procedures are approved by the court.

95.     In or around January 16, 2019, RealtyShares announced that: properties had been sold, the net proceeds were expected to be less than $100,000, the investment returned less than ten cents on the dollar and the reasons for this poor return included tax liens and deteriorating property values, all of which were contrary to Defendants' representations in the offering documents:

> The sale has closed… It is clear at this point that the investment returned less than $0.10 on the dollar. The reasons for the poor results are several.
>
> The borrower's original plan was to do minor repairs and clean up and to re-market the properties to local investors interested in purchasing individual or smaller groups of these homes. Only a few homes were sold, however, under this plan. The balance of the properties was not well maintained and so deteriorated physically. The property values decreased accordingly. Additionally, tax liens accrued and some of the houses were foreclosed upon by the taxing authority. Due to the number of potential liens on the property, cleaning up the title so that the properties could be sold was a lengthy, costly and time-consuming process. As a result of the sale, the net proceeds are expected to be less than $100,000. The loan has a personal guarantee and we are continuing to assess a potential continuation of our suit against the borrower…. The net sales proceeds will be promptly distributed if we determine that further litigation is unlikely to be of material benefit.

96.     While RealtyShares, RS Lending and their successor IIRR continued to pursue litigation relating to Mr. Ingersoll's personal guarantee, those efforts yielded nothing. In an update on the Platform dated September 3, 2019, IIRR stated as follows:

> Since the last update, IRM has received the borrower's response to IRM's interrogatories. IRM has reviewed the responses pertaining to the borrower's assets and the borrower's assets appear minimal. He has pawned his Rolex watch….

97.     Then, on September 25, 2019, IIRR disclosed that it would no longer pursue efforts on the personal guarantee because Mr. Ingersoll had no assets to recover, as well as that investors were likely to experience a total loss on their investment due to additional costs associated with cleaning up title on the properties:

> Since the last update, the process of title clean-up after the sale of the portfolio continues. This clean-up stage includes paying off tax liens, municipal fines, and other fees. A reserve balance of $75,000 was placed in escrow at the time of the sale, as is customary, to pay these potential claims. IRM now believes the entire $75,000 amount may be fully depleted. In 30-45 days, IRM expects to obtain a final decree from the court, which will confirm what portion, if any, of the escrow can be disbursed to investors. This court decree will also officially end the proceedings in this matter. IRM negotiated with, but was unable to hire a third-party loss mitigation or debt collection vendor to take over the claim on behalf of investors to pursue the guarantee. The vendors approached, performed their own analysis, and decided the claim is not worth pursuing. This confirms IRM's internal analysis that additional investor capital spent in the attempted collection of the guarantee will be futile due to lack of assets to capture. As a result, IRM has instructed the legal team to stop the pursuit of the guarantee.

98.     It is thus clear that, contrary to RealtyShares and RS Lending's representations in the offering documents, Mr. Ingersoll did *not* have "a net worth in excess of the loan amount."

99.     In sum, Defendants made a series of false statements to Plaintiff and the Nationwide SFR Class in connection with the Nationwide SFR Package Investment, including without limitation that: (1) a title search had been completed on each property, and the sponsor had cleared any existing liens prior to close; (2) the average value of the properties was $40,500, well in excess of the $2.625 million ($21,000 per property or 70 percent Loan-to-Cost) that RealtyShares advanced to the borrower to complete the purchase, which was obviously false given that investors experienced a total or near total loss after the properties were ultimately sold; (3) RS Lending, Inc. was secured by a first position lien on the properties; and (4) Mr. Ingersoll had a net worth in excess of the loan amount.

100.    Defendants' misrepresentations and other misconduct described above with respect to the Nationwide SFR Package violated the Exchange Act and common law, causing Plaintiff and the Nationwide SFR Class substantial losses, which they are entitled to recover. Pursuant to the California Blue Sky Law, Plaintiff and the Nationwide SFR Package Class are also entitled to rescission of their investments.

***Defendants Athwal and Forst are Control Persons of RealtyShares and RS Lending***

101.    As officers and directors of RealtyShares and RS Lending, Defendants Athwal and Forst, by reason of their high-level executive positions, were controlling persons of RealtyShares and RS Lending and had the power and influence, and exercised the same, to cause RealtyShares and RS Lending to engage in the conduct complained of herein.  Defendants Athwal and Forst were also culpable participants in statutory violations alleged herein.

## CLASS ACTION ALLEGATIONS

102.    Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of:

> All persons or entities who purchased debt securities offered or sold by RealtyShares or RS Lending relating to loans to Franchise Growth and/or associated entities for property acquisition and construction.

The foregoing class is the Franchise Growth Class.

103.    Plaintiff also brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Franchise Growth and/or associated entities for property acquisition and construction of a Church's Chicken restaurant to be located at 2735 Calumet Trace, Owensboro, Kentucky.

The foregoing class is the Owensboro Church's Chicken Subclass.

104.     Plaintiff also brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons or entities who purchased debt securities related to a loan to Ingersoll Financial for property acquisition and repair of 125 properties across the United States, known as the Nationwide SFR Package.

The foregoing class is the Nationwide SFR Class.

105.     The Franchise Growth Class, the Owensboro Church's Chicken Subclass and the Nationwide SFR Class are sometimes collectively referred to as the "Classes."

106.     Excluded from the Classes are Defendants, as well as any affiliated companies, immediate family members of Defendants, or entities they control.

107.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

108.     Each Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, on information and belief there are in excess of 100 members of the Franchise Growth Class, and in excess of 20 members of each of the Owensboro Church's Chicken Subclass and Nationwide SFR Class.

109.     There are questions of law and fact which are common to the Classes and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)      whether Defendants knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made to Plaintiff and Class members in violation of Section 10(b) of the Exchange Act and Rule 10b-5;

(b)     whether Defendants offered or sold securities originating from California to Plaintiff and Class members by means of written communications that included untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading in violation of Cal. Corp. Code §§ 25401 and 25501;

(c)     whether Defendants breached contracts with Plaintiff and the Classes;

(d)     whether Defendants made fraudulent misrepresentations to Plaintiff and the Classes;

(e)     whether Defendants made negligent misrepresentations to Plaintiff and the Classes;

(f)     whether the members of the Class have sustained damages and, if so, the proper measure of damages; and

(g)     whether Defendants Athwal and Forst are control persons of RealtyShares and RS Lending and jointly liable with RealtyShares and RS Lending for their violations of the Exchange Act under Section 20(a) of the Exchange Act.

110.    Plaintiff's claims are typical of the claims of the other members of the Classes, and Plaintiff does not have any interests adverse to the Classes.

111.    Plaintiff is an adequate representative of the Classes, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Classes.

112.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the

Classes, which would establish incompatible standards of conduct for the party opposing the Classes.

113.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

114.    Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## COUNT I

For Liability Under Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against Defendants on behalf of Plaintiff and the Franchise Growth and Owensboro Church's
Chicken Classes)

115.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

116.    This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

117.    Defendants RealtyShares and RS Lending knowingly or recklessly misrepresented material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Specifically, among the other misrepresentations identified in detail in the paragraphs above, RealtyShares and RS Lending misrepresented that: (a) they had conducted due diligence on Franchise Growth and that it had a proven track record and extensive experience in franchising; and (b) that they would disburse loans to Franchise Growth in installments spread over time so that the loan to-cost-ratio would be kept at agreed upon parameters designed to protect

investors. RealtyShares and RS Lending plainly knew that their representations that they had conducted due diligence were false insofar as they knew what due diligence they had or had not performed. IIRR is liable as successor to RealtyShares and RS Lending.

118.    Pursuant to this course of conduct, Defendants Athwal and Forst made the material misrepresentations attributed to them and participated directly or indirectly in the dissemination of RealtyShares and RS Lending's misrepresentations in the offering materials described herein.

119.    As a result of the dissemination of the aforementioned false and misleading statements, Plaintiff and the members of the Franchise Growth and Owensboro Church's Chicken Classes purchased the securities at issue and were damaged thereby. Had Plaintiffs and the members of the Franchise Growth and Owensboro Church's Chicken Classes known the truth, they would not have purchased said securities.

120.    By reason of the conduct alleged herein, each of the Defendants knowingly or recklessly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

121.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the members of the Franchise Growth and Owensboro Church's Chicken Classes suffered damages in connection with their respective purchases of securities, insofar as they have suffered substantial losses on their investments.

## **COUNT II**

For Liability Under Section 20(a) of the Exchange Act
(Against Defendants Athwal and Forst on behalf of Plaintiff and the Franchise Growth and
Owensboro Church's Chicken Classes)

122.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

123.    Defendants Athwal and Forst controlled the operation and management of RealtyShares and RS Lending, and directed and oversaw their business affairs and investor communications. Because of their positions as RealtyShares' CEO and Director, and for the reasons alleged herein, Defendants Athwal and Forst knew of the dissemination of the aforementioned false and misleading statements alleged above.

124.    Defendants Athwal and Forst were "controlling persons" of RealtyShares and RS Lending within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in RealtyShares and RS Lending's unlawful conduct as described herein.

125.    By reason of the above conduct, Defendants Athwal and Forst are additionally liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RealtyShares and RS Lending.

## COUNT III

For Liability Under Sections 25401 and 25501 of the California Blue Sky Law
(Against Defendants on behalf of Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass)

126.    Plaintiff repeats and realleges each allegation set forth herein.

127.    This count is brought pursuant to Cal. Corp. Code §§ 25401 and 25501, seeking a judgment requiring Defendants to rescind certain transactions pursuant to which they sold securities by means of untrue statements or omissions of material fact to Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass.

128.    Section 25401 of the California Blue Sky Law provides, in relevant part, as follows:

It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to

state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

129.    Defendants RealtyShares, RS Lending, Athwal and Forst offered or sold securities in California insofar as the offerings originated in California, the offering materials emanated from California, RealtyShares and RS Lending had their principal places of business in California, and investors' acceptances of their offers to sell securities were directed to entities in California. Defendant IIRR is liable as successor to RealtyShares and RS Lending.

130.    Defendants offered and/or sold securities relating to the Franchise Growth Investments to Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass.

131.    As described above, in soliciting investors, Defendants made untrue statements of material fact or omitted material facts necessary to make the statements made not misleading.

132.    Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass did not know the facts concerning Defendants' untruths or omissions.

133.    In offering and/or selling the Franchise Growth-related securities, Defendants did not exercise reasonable care and knew that material facts were falsified or omitted.

134.    By offering and/or selling securities to Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass by means of untrue statements of material fact or omission of material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, Defendants violated Section 25401 of the California Blue Sky Law.

135.    Pursuant to Section 25501 of the California Blue Sky Law, Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass are entitled to recover

from Defendants the consideration paid for the securities, together with interest, less the amount

of any income received on the securities, upon the tender of the security.

## COUNT IV

For Liability Under Section 25504 of the California Blue Sky Law
(Against Defendants Athwal and Forst on behalf of Plaintiff, the Franchise Growth Class and the
Owensboro Church's Chicken Subclass)

136.   Plaintiff repeats and realleges each allegation set forth herein.

137.   Section 25504 of the California Blue Sky Law provides, in relevant part, as

follows:

> Every person who directly or indirectly controls a person liable under Section
> 25501 or 25503, every partner in a firm so liable, every principal executive officer
> or director of a corporation so liable, every person occupying a similar status or
> performing similar functions, every employee of a person so liable who materially
> aids in the act or transaction constituting the violation, and every broker–dealer or
> agent who materially aids in the act or transaction constituting the violation, are
> also liable jointly and severally with and to the same extent as such person, unless
> the other person who is so liable had no knowledge of or reasonable grounds to
> believe in the existence of the facts by reason of which the liability is alleged to
> exist.

138.   As set forth above, RealtyShares and RS Lending are liable under Section 25501

of the California Blue Sky Law because they offered and sold securities to Plaintiff, the

Franchise Growth Class and the Owensboro Church's Chicken Subclass by means of untrue

statements of material fact or omissions to state material facts necessary in order to make the

statements made, in light of the circumstances in under which they were made, not misleading,

and knew, or had reasonable grounds to believe in the existence of the facts by reason of which

liability is alleged to exist.

139.   Defendants Athwal and Forst, directly or indirectly, controlled RealtyShares and

RS Lending, and served as officers and/or directors thereof, or occupied a similar status or

performed similar functions.

140.    Defendants Athwal and Forst knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which RealtyShares and RS Lending are liable under the California Blue Sky Law.

141.    By virtue of their positions as controlling persons of RealtyShares and RS Lending, and their conduct alleged herein, Defendants Athwal and Forst are jointly and severally liable to Plaintiff and the Nationwide SFR Class under the California Blue Sky Law.

142.    Defendants Athwal and Forst, as employees of the sellers RealtyShares and RS Lending, are also liable under Section 25504 of the California Blue Sky Law for materially aiding RealtyShares and RS Lending's sales of securities in violation of Sections 25401 and 25501 of that Law, and are jointly and severally liable with and to the same extent as RealtyShares and RS Lending.

143.    Accordingly, pursuant to the California Blue Sky Law, Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass are entitled to recover from Defendants Athwal and Forst the consideration paid for the securities, together with interest, less the amount of any income received on the securities.

## COUNT V

For Liability for Breach of Contract
(Against Defendants RealtyShares, RS Lending and IIRR on behalf of Plaintiff and the Franchise Growth and Owensboro Church's Chicken Classes)

144.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

145.    The Subscription Agreements for the Franchise Growth Investments, which incorporated the Private Placement Memoranda for each investment, including the Owensboro

Church's Chicken Investment, are binding and enforceable contracts and were entered into for valid consideration.

146.    The Subscription Agreements, by incorporating the Private Placement Memoranda and other offering materials, required RealtyShares and RS Lending to conduct due diligence of the borrower Franchise Growth and ensure the loans were disbursed in conformity with the representations in the offering documents.

147.    By failing to conduct due diligence of Franchise Growth and ensure the loans were disbursed in accordance with the representations in the offering documents as described herein, Defendants RealtyShares and RS Lending breached the Subscription Agreements. IIRR is liable as successor to RealtyShares and RS Lending.

148.    As a direct result of these Defendants' breaches of contract, Plaintiff and the Franchise Growth and Owensboro Church's Chicken Class have been damaged in an amount to be determined at trial.

<u>**COUNT VI**</u>

For Liability for Fraudulent Misrepresentation
(Against Defendants on behalf of Plaintiff and the Franchise Growth and Owensboro Church's Chicken Classes)

149.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

150.    In soliciting the Franchise Growth Investments, Defendants intentionally supplied false information for the guidance of Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Class, including that: (a) Defendants had conducted due diligence on Franchise Growth and that it had a proven track record and extensive experience in restaurant franchising; and (b) Defendants would disburse loans to Franchise Growth in

installments spread over time so that the loan to-cost-ratio would be kept at agreed upon parameters designed to protect investors.

151.    Defendants made their misrepresentations with the intent to induce Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Subclass to act and rely upon them, and Plaintiff and Class members did so act and rely upon them.

152.    Defendants knew or recklessly disregarded the fact that their representations regarding the Franchise Growth Investments were false.

153.    Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Class justifiably and reasonably relied on the truth of Defendants' statements.

154.    Had Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Class known of the foregoing material misstatements, they would not have purchased the securities at issue.

155.    As a direct and proximate result of the foregoing, Plaintiff and the Franchise Growth and Owensboro Church's Chicken Class have been damaged in an amount to be determined at trial.

## <u>COUNT VII</u>

For Liability for Negligent Misrepresentation
(Against Defendants on behalf of Plaintiff and the Franchise Growth and Owensboro Church's Chicken Classes)

156.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

157.    As described above, in soliciting the Franchise Growth Investments, Defendants made untrue statements of material fact to Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Class, including without limitation that: (a) Defendants had

conducted due diligence on Franchise Growth and that it had a proven track record and extensive experience in restaurant franchising; and (b) Defendants would disburse loans to Franchise Growth in installments spread over time so that the loan to-cost-ratio would be kept at agreed upon parameters designed to protect investors.

158.   Defendants knew or should have known that such representations were false.

159.   Defendants intended that Plaintiffs, the Franchise Growth Class and the Owensboro Church's Chicken Class, as potential investors, would rely on such statements and omissions.

160.   Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Class justifiably and reasonably relied on the truth of Defendants' statements.

161.   Had Plaintiff, the Franchise Growth Class and the Owensboro Church's Chicken Class known of the foregoing material misstatements, they would not have purchased the securities at issue.

162.   Defendants failed to exercise reasonable care or competence in offering the Franchise Growth Investments to the Franchise Growth Class and the Owensboro Church's Chicken Class.

163.   As a direct and proximate result of the foregoing, Plaintiff and the Franchise Growth and Owensboro Church's Chicken Class have been damaged in an amount to be determined at trial.

## COUNT VIII

For Liability Under Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against Defendants RealtyShares, RS Lending, IIRR and Athwal on behalf of Plaintiff and the
Nationwide SFR Class)

164.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

165.    This Count is asserted against Defendants RealtyShares, RS Lending, IIRR and and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

166.    Defendants   RealtyShares   and   RS   Lending   knowingly   or   recklessly misrepresented material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in connection with the Nationwide SFR Package. Specifically, among the other misrepresentations identified in detail in the paragraphs above, Defendants misrepresented that: (1) a title search had been completed on each property, and the sponsor had cleared any existing liens prior to close; (2) the average value of the properties was $40,500, well in excess of the $2.625 million ($21,000 per property or 70 percent Loan-to-Cost) that RealtyShares advanced to the borrower to complete the purchase, which was obviously false given that investors experienced a total or near total loss after the properties were ultimately sold; (3) RS Lending was secured by a first position lien on the properties; and (4) Mr. Ingersoll had a net worth in excess of the loan amount. Defendant IIRR is liable as successor to RealtyShares and RS Lending.

167.    Pursuant to this course of conduct, Defendant Athwal made the material misrepresentations attributed to him and participated directly or indirectly in the dissemination of RealtyShares and RS Lending's misrepresentations in the offering materials described herein.

168.    As a result of the dissemination of the aforementioned false and misleading statements, Plaintiff and the members of the Nationwide SFR Class purchased the securities at issue and were damaged thereby. Had Plaintiff and the members of the Nationwide SFR Class known the truth, they would not have purchased said securities.

169.    By reason of the conduct alleged herein, the foregoing Defendants knowingly or recklessly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

170.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the members of the Nationwide SFR Class suffered damages in connection with their respective purchases of securities, insofar as they have suffered substantial losses on their investments.

## COUNT IX

For Liability Under Section 20(a) of the Exchange Act
(Against Defendant Athwal on behalf of Plaintiff and the Nationwide SFR Class)

171.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

172.    Defendant Athwal controlled the operation and management of RealtyShares and RS Lending, and directed and oversaw their business affairs and investor communications. Because of his position as RealtyShares' CEO and Director, and for the reasons alleged herein, Defendant Athwal knew of the dissemination of the aforementioned false and misleading statements alleged above.

173.    Defendant Athwal was a "controlling persons" of RealtyShares and RS Lending within the meaning of Section 20(a) of the Exchange Act. In this capacity, he participated in RealtyShares and RS Lending's unlawful conduct as described herein.

174.     By reason of the above conduct, Defendant Athwal is additionally liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RealtyShares and RS Lending.

## COUNT X

For Liability Under Sections 25401 and 25501 of the California Blue Sky Law
(Against Defendants RealtyShares, RS Lending, IIRR and Athwal on behalf of Plaintiff and the Nationwide SFR Class)

175.     Plaintiff repeats and realleges each allegation set forth herein.

176.     This count is brought pursuant to Cal. Corp. Code §§ 25401 and 25501, seeking a judgment requiring Defendants RealtyShares, RS Lending, IIRR and Athwal to rescind certain transactions pursuant to which they sold securities by means of untrue statements or omissions of material fact to Plaintiff and the Nationwide SFR Class.

177.     Section 25401 of the California Blue Sky Law provides, in relevant part, as follows:

> It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

178.     Defendants RealtyShares, RS Lending and Athwal offered or sold securities in California insofar as the offerings originated in California, the offering materials emanated from California, RealtyShares and RS Lending had their principal places of business in California, and investors' acceptances of their offers to sell securities were directed to entities in California. Defendant IIRR is liable as RealtyShares and RS Lending's successor.

179.     The foregoing Defendants offered and/or sold securities relating to the Nationwide SFR Package to Plaintiff and the Nationwide SFR Class.

180.    As described above, in soliciting investors, these Defendants made untrue statements of material fact or omitted material facts necessary to make the statements made not misleading.

181.    Plaintiff and the Nationwide SFR Class did not know the facts concerning these Defendants' untruths or omissions.

182.    In offering and/or selling the Nationwide SFR Package-related securities, these Defendants did not exercise reasonable care and knew that material facts were falsified or omitted.

183.    By offering and/or selling securities to Plaintiff and the Nationwide SFR Class by means of untrue statements of material fact or omission of material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, these Defendants violated Section 25401 of the California Blue Sky Law.

184.    Pursuant to Section 25501 of the California Blue Sky Law, Plaintiff and the Nationwide SFR Class are entitled to recover from Defendants RealtyShares, RS Lending, IIRR and Athwal the consideration paid for the securities, together with interest, less the amount of any income received on the securities, upon the tender of the security.

## COUNT XI

For Liability Under Section 25504 of the California Blue Sky Law
(Against Defendant Athwal on behalf of Plaintiff and the Nationwide SFR Class)

185.    Plaintiff repeats and realleges each allegation set forth herein.

186.    Section 25504 of the California Blue Sky Law provides, in relevant part, as follows:

Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or

performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker–dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

187.    As set forth above, RealtyShares and RS Lending are liable under Section 25501 of the California Blue Sky Law because they offered and sold securities to Plaintiff and the Nationwide SFR Class by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances in under which they were made, not misleading, and knew, or had reasonable grounds to believe in the existence of the facts by reason of which liability is alleged to exist.

188.    Defendant Athwal, directly or indirectly, controlled RealtyShares and RS Lending, and served as an officer and director thereof, or occupied a similar status or performed similar functions.

189.    Defendant Athwal knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which RealtyShares and RS Lending are liable under the California Blue Sky Law.

190.    By virtue of his position as a controlling person of RealtyShares and RS Lending, and his conduct alleged herein, Defendant Athwal is jointly and severally liable to Plaintiff and the Nationwide SFR Class under the California Blue Sky Law.

191.    Defendant Athwal, as an employee of the sellers RealtyShares and RS Lending, is also liable under Section 25504 of the California Blue Sky Law for materially aiding RealtyShares and RS Lending's sales of securities in violation of Sections 25401 and 25501 of that Law, and is jointly and severally liable with and to the same extent as RealtyShares and RS Lending.

192.    Accordingly, pursuant to the California Blue Sky Law, Plaintiff and the Nationwide SFR Class are entitled to recover from Defendant Athwal the consideration paid for the securities, together with interest, less the amount of any income received on the securities.

### COUNT XII

For Liability for Breach of Contract
(Against Defendants RealtyShares, RS Lending and IIRR on behalf of Plaintiff and the Nationwide SFR Class)

193.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

194.    The Subscription Agreement for the Nationwide SFR Package, which incorporated the Private Placement Memoranda and other offering materials for the Nationwide SFR Package, is a binding and enforceable contract entered into for valid consideration.

195.    The Subscription Agreements, by incorporating the Private Placement Memoranda and other offering materials, required RealtyShares and RS Lending to, among other things, maintain a first position lien on the properties that were the subject of the loan as security for the loan and ensure the average value of the properties was within the parameters described in the offering materials.

196.    By engaging in the conduct described above and breaching the foregoing promises, Defendants RealtyShares and RS Lending breached the Subscription Agreements. Defendant IIRR is liable as their successor.

197.    As a direct result of these Defendants' breaches of contract, Plaintiff and the Nationwide SFR Class have been damaged in an amount to be determined at trial.

## COUNT XIII

For Liability for Fraudulent Misrepresentation
(Against Defendants RealtyShares, RS Lending, IIRR and Athwal on behalf of Plaintiff and the
Nationwide SFR Class)

198.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

199.     In soliciting investors in the Nationwide SFR Package, Defendants RealtyShares, RS Lending, IIRR and Athwal intentionally supplied false information for the guidance of Plaintiff and the Nationwide SFR Class, including that: (1) a title search had been completed on each property, and the sponsor had cleared any existing liens prior to close; (2) the average value of the properties was $40,500, well in excess of the $2.625 million ($21,000 per property or 70 percent Loan-to-Cost) that RealtyShares advanced to the borrower to complete the purchase, which was obviously false given that investors experienced a total or near total loss after the properties were ultimately sold; (3) RS Lending, Inc. was secured by a first position lien on the properties; and (4) Mr. Ingersoll had a net worth in excess of the loan amount.

200.     Defendants RealtyShares, RS Lending, IIRR and Athwal made their misrepresentations with the intent to induce Plaintiff and the Nationwide SFR Class to act and rely upon them, and Plaintiff and the Nationwide SFR Class did so act and rely upon them.

201.     Defendants RealtyShares, RS Lending, IIRR and Athwal knew or recklessly disregarded the fact that their representations in the offering documents for the Nationwide SFR Package were false.

202.     Plaintiff and the Nationwide SFR Class justifiably and reasonably relied on the truth of these Defendants' statements.

203.    Had Plaintiff and the Nationwide SFR Class known of the foregoing material misstatements, they would not have purchased the securities at issue.

204.    As a direct and proximate result of the foregoing, Plaintiff and the Nationwide SFR Class have been damaged in an amount to be determined at trial.

## COUNT XIV

For Liability for Negligent Misrepresentation
(Against Defendants RealtyShares, RS Lending, IIRR and Athwal on behalf of Plaintiff and the Nationwide SFR Class)

205.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

206.    As described above, in soliciting Nationwide SFR Package Investments, Defendants RealtyShares, RS Lending, IIRR and Athwal made untrue statements of material fact to Plaintiff and the Nationwide SFR Class, including without limitation that: (1) a title search had been completed on each property, and the sponsor had cleared any existing liens prior to close; (2) the average value of the properties was $40,500, well in excess of the $2.625 million ($21,000 per property or 70 percent Loan-to-Cost) that RealtyShares advanced to the borrower to complete the purchase, which was obviously false given that investors experienced a total or near total loss after the properties were ultimately sold; (3) RS Lending, Inc. was secured by a first position lien on the properties; and (4) Mr. Ingersoll had a net worth in excess of the loan amount.

207.    Defendants RealtyShares, RS Lending, IIRR and Athwal knew or should have known that such representations were false

208.    Defendants RealtyShares, RS Lending, IIRR and Athwal intended that Plaintiffs and the Nationwide SFR Class, as potential investors, would rely on such statements and omissions.

209.    Plaintiff and the Nationwide SFR Class justifiably and reasonably relied on the truth of Defendants' statements.

210.    Had Plaintiff and the Nationwide SFR Class known of the foregoing material misstatements, they would not have purchased the securities at issue.

211.    Defendants failed to exercise reasonable care or competence in offering to the Nationwide SFR Class the Nationwide SFR Class Investments.

212.    As a direct and proximate result of the foregoing, Plaintiff and the Nationwide SFR Class have been damaged in an amount to be determined at trial.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the other members of the Classes, requests that the Court enter judgment against Defendants as follows:

A.    Declaring that this is a properly maintainable class action under Federal Rule of Civil Procedure 23 and declaring Plaintiff to be a proper Class representative;

B.    Awarding Plaintiff and members of the Classes damages for Defendants' violations of law;

C.    Awarding Plaintiff and members of the Classes the full recovery of the consideration paid for the securities at issue, together with interest, less the amount of any income received on the securities, for violations of the California Blue Sky Law;

D.      Holding Defendants Athwal and Forst jointly and severally liable with RealtyShares and RS Lending for their violations of the Exchange Act and the California Blue Sky Law;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.


Dated:  January 17, 2020                              By their attorneys:


                                                      /s/ Ian J. McLoughlin
                                                      Edward F. Haber (BBO #215620)
                                                      Michelle Blauner (BBO #549049)
                                                      Ian J. McLoughlin (BBO #647203)
                                                      Patrick J. Vallely (BBO #663866)
                                                      Shapiro Haber & Urmy LLP
                                                      2 Seaport Lane
                                                      Boston, MA 02210
                                                      Telephone: (617) 439-3939
                                                      Facsimile: (617) 439-0134
                                                      ehaber@shulaw.com
                                                      mblauner@shulaw.com
                                                      imcloughlin@shulaw.com
                                                      pvallely@shulaw.com

                                                      *Attorneys for Plaintiff and the Classes*

## Certification of Plaintiff
## Purusant to Federal Securiteis Laws

I, Walter Raudonis, as trustee for the Walter J. Raudonis 2016 Revocable Trust, declare under the pains and penalties of perjury as follows:

1.    I have reviewed the complaint to be filed against RealtyShares, Inc., RS Lending, Inc., Navjot Athwal, Edward Forst and IIRR Management Services, LLC and authorize its filing on my behalf, as trustee for the Walter J. Raudonis 2016 Revocable Trust.

2.    I did not purchase the securities at issue in this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws or any other laws.

3.    I, as trustee for the Walter J. Raudonis 2016 Revocable Trust, am willing to serve as a representative party on behalf of a class as set forth in the complaint, including providing testimony at deposition and trial. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

4.    The attached Schedule A lists all of my purchases and sales of the securities at issue in this action as specified in the complaint.

5.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

6.    I will not accept any payment for serving as a representative party on behalf of the class as set forth in the complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

7.    The matters set forth in this certification are true to the best of my current knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _1/17/20_

Walter Raudonis, as trustee for the
Walter J. Raudonis 2016 Revocable Trust

## Schedule A

| Date | Series No. | Trans. | Price | Income | Principal Returned | Losses |
|------|-----------|--------|-------|--------|-------------------|--------|
| 8/25/16 | RSL.201609.11 | Purchase | $100,000 | $7,638.87 | $1,010.61 | $91,350.52 |
| 5/2/18 | RSL.2017A.162 | Purchase | $100,000 | $7,098.62 | $37,764.96 | $55,136.42 |