UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                 )
WALTER RAUDONIS, as trustee for  )
the WALTER J. RAUDONIS 2016      )
REVOCABLE TRUST, BRAD HONEYCUTT, )
DAVID HOLLAND and JEREMY DAVIS,  )
individually and on behalf of all)
others similarly situated,       )
                                 )
                Plaintiffs,      )
                                 )     Civil Action
     v.                          )     No. 20-10107
                                 )
REALTYSHARES, INC., RS LENDING,  )
INC., NAVJOT ATHWAL, EDWARD FORST,)
IIRR MANAGEMENT SERVICES, LLC, and)
JOHN DOES I-VII,                 )
                                 )
                Defendants.      )
_____)
                                 )
WALTER RAUDONIS, as trustee for  )
the WALTER J. RAUDONIS 2016      )
REVOCABLE TRUST, DAVID HOLLAND and)
JEREMY DAVIS, individually and on)
behalf of all others similarly   )
situated,                        )
                                 )
                Plaintiffs,      )
                                 )     Civil Action
     v.                          )     No. 21-10329
                                 )
JOHN JARVE, JOHN BUTTRICK, NIKOS )
BONATSOS and TYLER SOSIN,        )
                                 )
                Defendants.      )
_____)
```

**MEMORANDUM AND ORDER**

June 11, 2024

Saris, D.J.

1

**INTRODUCTION**

Plaintiffs purchased securities through an online platform called RealtyShares, which purported to perform due diligence on real estate investment opportunities it advertised on an online marketplace. Those investments failed when the operators of investment property businesses could not finance completion of the projects the securities were intended to fund. Alleging that RealtyShares misrepresented the investments and its supposed due diligence, Plaintiffs have sued the company and its board of directors.[1] Defendants have moved to compel arbitration. For the reasons set forth below, the motions to compel arbitration (Raudonis I, Dkt. 87; Raudonis II, Dkt. 21) are **ALLOWED** and both cases are **STAYED**.

**FACTUAL BACKGROUND**

The Court draws the following facts from the documents submitted in relation to the motion to compel arbitration, "construe[s] the record in the light most favorable to the non-moving party[,] and draw[s] all reasonable inferences in its

---

[1] Plaintiffs first brought suit against the company. No. 1:20-cv-10107 ("Raudonis I"). A related case was opened on February 26, 2021, naming John Jarve, John Buttrick, Nikos Bonatsos, and Tyler Sosin as Defendants. No. 1:21-cv-10329 ("Raudonis II"). Bonatsos and Sosin were dismissed from Raudonis II by stipulation. Defendants filed identical Motions to Compel in both actions, and Plaintiffs filed identical responses.

favor." See Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021).

Plaintiffs are accredited investors and members of a putative class that invested in real estate through an online marketplace called RealtyShares. The RealtyShares website, Plaintiffs allege, falsely claimed that Defendants had done due diligence on the properties and developers advertised on the website, and misrepresented the structure of the loans and priority of the debt.

In order to make investments on the RealtyShares platform, investors first had to agree to the website Terms of Service (the "Terms" or "Terms of Service"). Those Terms require that "any dispute arising out of or relating to" the Terms must be "finally resolved by binding arbitration." Raudonis I, Dkt. 89-3 at 19; Raudonis II, Dkt. 23-3 at 19. They also require that users of the platform "bring claims against RealtyShares only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." Raudonis I, Dkt. 89-3 at 19; Raudonis II, Dkt. 23-3 at 19.

Once investors agreed to the Terms of Service, they could access an online marketplace where investments -- and certain representations as to the due diligence purportedly performed on them -- could be found. When investors identified investment opportunities that interested them, they could purchase them through the website, which would send them a "Property Information

3

Package." Raudonis I, Dkt. 11 at 19; Raudonis II, Dkt. 1 at 15. That package included the note for the debt securities, a private placement memorandum, the subscription agreement, a promissory note, and other transaction documents.

The parties dispute whether the arbitration agreement in the Terms of Service governs this dispute and accordingly whether arbitration can be compelled. The parties do not dispute that they were signatories on all relevant documents and that if Defendants can compel arbitration, all parties will be bound by this requirement.

## LEGAL STANDARD

A motion to compel arbitration is evaluated against "the summary judgment standard to determine whether a genuine dispute of fact exists regarding the parties' agreement to arbitrate." Air-Con, Inc., 21 F.4th at 176. "[T]he FAA requires courts to treat arbitration as a matter of contract and enforce agreements to arbitrate according to their terms." Id. at 174 (cleaned up). But the FAA does not compel "a party . . . to submit to arbitration any dispute which [it] has not agreed so to submit." See McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986)). Thus, a party that moves to compel arbitration "must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause,

4

and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

## DISCUSSION

Plaintiffs advance two main arguments for why arbitration should not be compelled. First, they argue that because RealtyShares "purported to retain an 'absolute' right to modify the Terms of Service unilaterally, without notice . . . there is no true mutuality of obligation, and therefore, no agreement to arbitrate any issue exists." Raudonis I, Dkt. 104 at 6 (emphasis omitted). Second, Plaintiffs argue that this dispute is not governed by the Terms of Service. Neither argument is availing.

I. **Existence of an agreement to arbitrate**

A party seeking to compel arbitration must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V., 344 F.3d at 142. Defendants have provided the Court with the Terms of Service agreed to by Plaintiffs when they registered with the RealtyShares platform and ratified each time they made purchases on it.

The Terms contain a provision by which the Defendants could amend the Terms at any time:

> RealtyShares reserves the right, in its sole and absolute discretion and without any prior notice to you, to modify, correct or replace any of the terms of this

5

>     Agreement . . . . Such modification shall become a part
>     of this Agreement and is automatically effective once
>     posted on the Site.

See Raudonis I, Dkt. 89-3 at 15. The Terms also include a clause specifying that changes to the Terms would not have retroactive effect. See id. at 2 ("Your use of the Site and Service is governed by the then current version of the [Terms] in effect on the date of such use . . . . [T]he resolution of any dispute that arises between you and RealtyShares will be governed by the Terms in effect at the time the events giving rise to such dispute occurred.").

Plaintiffs rely on National Federation of the Blind v. The Container Store, Inc. to argue that the Term's one-sided modification right creates a lack of mutuality that defeats contract formation as a matter of law. 904 F.3d 70, 87 (1st Cir. 2018). National Federation involved a retail store that had customers sign up to be part of a loyalty rewards program that included an agreement to arbitrate. The Plaintiff organization represented blind individuals who had signed up for the loyalty program, some of whom signed up at the retail store and had no way of knowing that enrollment in the program entailed an agreement to arbitrate. Id. at 76. Applying Texas law, the First Circuit held that the contract in question was illusory because the Defendants had the right to modify the arbitration agreement at any time. Id. at 86-87. "The crux of th[e] issue" was whether the Defendant had

6

"the power to make changes to its arbitration policy that ha[d] retroactive effect, meaning changes to the policy that would strip the right of arbitration from a party who ha[d] already attempted to invoke it." Id. at 86 (citing Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 205 (5th Cir. 2012)); see also Wainblat v. Comcast Cable Commc'ns, LLC, No. 19-10976, 2019 WL 5698446, at *4-5 (D. Mass. Nov. 4, 2019) (compelling arbitration under Massachusetts law after distinguishing from National Federation because even though an arbitration agreement contained a unilateral modification provision it did not permit avoidance of arbitration through retroactive application).

Though RealtyShares retained a right to unilaterally modify the Terms, that right does not allow RealtyShares to escape arbitration through retroactive application. This case is distinguishable from National Federation, because the Terms themselves require that the parties be held to the version of the Terms as they stood at the time each Plaintiff made purchases of securities on the RealtyShares platform. Defendants do not have the capacity to change the Agreement retroactively and avoid arbitration. The Terms are therefore not illusory, and form a valid, enforceable contract.

## II. Applicability of arbitration agreement

Plaintiffs argue that the arbitration agreement in the Terms of Service covers only disputes relating to the website, not to

7

the RealtyShares services itself. This argument is contrary to the text of the Terms of Service. Before using the website and the RealtyShares service, users had to agree to the "Terms of Service". The Terms set forth "the legally binding terms and conditions for your use of the website . . . and the service owned and operated by the Company." Raudonis I, Dkt. 89-3 at 2 (emphasis added); see also Raudonis I, Dkt. 89-2 at 2. Under a section titled "Governing Law; Arbitration", the Terms state that "any dispute arising out of or relating to the Terms, or any breach thereof, shall be finally resolved by binding arbitration . . . " Raudonis I, Dkt. 89-3 at 19; see also Raudonis I, Dkt. 89-1 at 18. In the same section, the Terms say that "[a]ny cause of action arising out of or related to the Service, and all products and services offered via the RealtyShares Site or Service must commence within one (1) year after the cause of action accrues." Raudonis I, Dkt. 89-3 at 19. This language confirms that disputes arising from the services themselves were meant to be included in the arbitration agreement. The arbitration agreement contained in the Terms of Service therefore govern disputes arising out of either use of the website or use of the RealtyShares platform.

In a similar vein, Plaintiffs argue that the disputes arise out of a different document, the Subscription Agreements, not the Terms of Service. The Supreme Court has recently addressed a similar issue, and held that when parties have entered into

8

multiple agreements the court must decide which governs the question of arbitrability. Coinbase, Inc. v. Suski, 144 S. Ct. 1186, 1194 (2024).

The Subscription Agreements were the contracts through which the Plaintiffs purchased "certain . . . Borrower Payment Dependent Notes" from the Defendants. See, e.g., Dkt. 97-1 at 74. The Subscription Agreement refers specifically to and incorporates the Terms of Service. See Dkt. 97-2 at 75 ("By signing electronically below, you agree to the following terms together with the Terms of Service . . . ."). Accordingly, it is the Terms of Service that govern.

Plaintiffs pepper their brief with an underdeveloped argument that judicial estoppel precludes Defendants' motion to compel because "the RealtyShare Defendants, in a similar investor dispute, prevailed on an argument that the arbitration provision in the website Terms of Service do not apply to investment disputes like those asserted here." Dkt. 104 at 7 (emphasis omitted).

The First Circuit has identified three elements that are generally required for a claim of judicial estoppel to be successful. "First, a party's earlier and later positions must be clearly inconsistent. Second, the party must have succeeded in persuading a court to accept the party's earlier position. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by

9

the court." Knowlton v. Shaw, 704 F.3d 1, 10 (1st Cir. 2013) (cleaned up). Plaintiffs point to no case in which Defendants have raised the argument, let alone succeeded on it. Rather, they provide an email from a RealtyShares representative to the AAA relating to a different case. Dkt. 106 at 6. Since there is no evidence on the record that Defendant was ever able to persuade a court or arbitrator to accept the earlier position, Defendants' Motion to Compel is not barred on the grounds of judicial estoppel.

## ORDER

For the reasons stated above, the Court **ALLOWS** the Motions to Compel (Raudonis I, Dkt. 87; Raudonis II, Dkt. 21) and **STAYS** both cases pending resolution of the arbitration.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

10